## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH HARVEY, SR., as Administrator ad Prosequendum and Administrator of the ESTATE OF JOSEPH HARVEY, JR., Deceased; and Individually, | Civ. No. 14-3670 (KM) |
| Plaintiff, | OPINION |
| v. | |
| COUNTY OF HUDSON, HUDSON COUNTY PROSECUTOR'S OFFICE, STATE OF NEW JERSEY, JOSEPH LAMONT WALKER, and JOHN DOES 1-25, | |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.:**

Joseph Harvey, Sr., as administrator ad prosequendum and administrator of the estate of Joseph Harvey, Jr., brings this civil rights action against three government entities: the County of Hudson (the "County"), the Hudson County Prosecutor's Office (the "HCPO"), and the State of New Jersey (the "State") (together, the "government defendants"). He also sues one individual, defendant Joseph LaMont Walker. Now before the Court is the motion of the government defendants to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). (Dkt. Nos. 8, 14) The government defendants argue that Eleventh Amendment principles of sovereign immunity bar these claims, which should therefore be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. In addition, and in the alternative, they argue that the Complaint fails to state a claim, and should therefore be dismissed under Rule 12(b)(6).

The counts of the Complaint overlap to some degree, and are not clearly segregated so that each states one and only one cause of action. Consequently,

1

it is not always possible to state neatly that one count is dismissed, and another sustained; to some degree this Opinion necessarily speaks in terms of legal theories as to particular defendants. To be clear, the claims that remain after the Court's disposition of the motions are:

> JOSEPH LAMONT WALKER:  All claims (Walker has not filed a motion to dismiss).
> HUDSON COUNTY PROSECUTOR'S OFFICE: Section 1983, NJCRA, Wrongful Death Act, and Survivor's Act claims for negligent hiring and failure to discipline.

All other claims against all other named defendants are dismissed on jurisdictional or substantive grounds, with or without prejudice as described herein.

## I.    FACTUAL BACKGROUND

The Complaint, as yet untested by any fact finder, describes a senseless road rage incident on June 8, 2013, that resulted in the death of Joseph Harvey, Jr.[1] Defendant Joseph LaMont Walker, an off-duty HCPO Detective, and Harvey, the decedent, were driving in separate cars in Maryland. (Complaint, Dkt. No. 1 ("Cplt.") ¶¶ 15-18) There was an altercation between Walker and Harvey, in which Walker shot Harvey several times with his service revolver, killing him. (Cplt. ¶ 20)

Harvey's father, Joseph Harvey, Sr., filed this action on June 6, 2014, as administrator ad prosequendum and administrator of the estate of his son. Named as defendants are Walker, the HCPO, the County, the State, and numerous "John Does."[2] The Complaint asserts various constitutional claims against all defendants pursuant to 42 U.S.C. § 1983 ("Section 1983"), including violations of the 1st, 4th, 8th, and 14th amendments. Essentially, the Complaint

---

[1]    "Harvey" herein refers to Mr. Harvey, Jr., the decedent, unless otherwise specified.

[2]    Because only the government defendants have filed motions to dismiss, the claims against Walker and the unidentified individuals are not addressed in this Opinion.

alleges that Walker violated Harvey's constitutional rights when he shot and killed Harvey.[3] It further alleges that the State, HCPO, and the County are responsible for Walker's actions.

As to the government defendants, the Section 1983 claims boil down to the contention that the government defendants negligently hired Walker, failed to discipline him as appropriate, and failed to supervise and train him, particularly in relation to the use of his service weapon (both on and off-duty) and the use of deadly force. (*See, e.g.*, Cplt. ¶¶ 9.b, 61.) The Complaint alleges that these failures affected not only Walker, but the government defendants' employees generally. (*See, e.g.*, Cplt. ¶¶ 27-28.) The Complaint asserts similar claims pursuant to New Jersey's state-law analogue to Section 1983, the New Jersey Civil Rights Act ("NJCRA"). In addition to these civil rights claims, the plaintiff brings a claim of wrongful death and a survival action under New Jersey law pursuant to N.J. Stat. Ann. §§ 2A:31-1 and 2A:15-3. (*See* Cplt. pp. 22-23.)

On December 22, 2014, the State and the HCPO filed a joint motion to dismiss the Complaint. (Dkt. No. 8). On February 27, 2015, the County brought a separate motion to dismiss.[4] (Dkt. No. 14) The government defendants argue that they are entitled to sovereign immunity under the Eleventh Amendment, and that therefore the claims against them should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). In the alternative, they move under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim.

---

[3]   The plaintiff also asserts a claim of "Assault and Battery and Unlawful Use of Deadly Force" against defendant Walker only. (*See* Cplt. p. 19.)

[4]   The County filed an answer to the Complaint before filing its motion to dismiss, and it also asserts sovereign immunity. (Dkt. No. 13) Its motion might therefore be better viewed as one under FED. R. CIV. P. 12(c) (judgment on the pleadings) and 12(b)(1) (jurisdiction). Because the distinction between Rule 12(c) and 12(b)(6) is inconsequential to the analysis here, I set it aside.

## II.   STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges are either facial or factual attacks. *See* 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007). The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. Under this standard, a court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Id.*

The government defendants' argument that they are immune from suit based on the Eleventh Amendment is postured as a facial challenge to the jurisdictional basis of the Complaint. Accordingly, the Court will take the allegations of the Complaint as true. *See Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

In addition, and in the alternative, the motions seek dismissal of the Complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)

4

("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

FED. R. CIV. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

## III.   JURISDICTION: ELEVENTH AMENDMENT

The government defendants move to dismiss the Complaint for lack of jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), based on sovereign immunity. The Eleventh Amendment to the Constitution, which is of jurisdictional stature, renders the states immune from certain claims: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Despite the limited scope of its wording, the Eleventh Amendment has for over a century been held to incorporate a more general principle of sovereign immunity. In general, it bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984); *Kelley v. Edison Twp.*, No. 03-4817,

5

2006 WL 1084217, at *6 (D.N.J. Apr. 25, 2006) (citing *Bennett v. City of Atl. City*, 288 F. Supp. 2d 675, 679 (D.N.J. 2003)); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890).

The plaintiff here sues under, *inter alia*, 42 U.S.C. § 1983.[5] Although Congress may in some circumstances override a state's sovereign immunity, it did not do so when it enacted Section 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Monetary claims for deprivations of civil rights under Section 1983 are therefore subject to the Eleventh Amendment sovereign immunity bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 58 (1989). Closely related is the principle that State entities are not "persons" who may be subject to liability under 42 U.S.C. § 1983. *Id.* at 70-71.

State-law claims, too, may be barred. Even where jurisdiction is otherwise proper, the Eleventh Amendment denies a federal court jurisdiction to hear state-law claims that a state or its agencies violated state law. *See Pennhurst State School & Hosp.*, 465 U.S. at 121. Under the NJCRA, the Section 1983 sovereign immunity analysis applies by analogy to bar claims for damages against the state and its entities.[6] *Szemple v. Corr. Med. Servs.*, 493 F.

---

[5]    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

[6]    The relevant portion of the NJCRA provides:

Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring

App'x 238, 241 (3d Cir. 2012); *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 n. 5 (D.N.J. 2010) (quoting *Chapman v. State of New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (Aug. 25, 2009)). And the NJCRA, like Section 1983, does not define a "person" to include the state. *Didiano v. Balicki*, 488 Fed. App'x 634, 638 (3d Cir. 2012) (explaining that "person" as defined in the New Jersey Code does not encompass the state or its functional equivalents). The Eleventh Amendment bar of course applies to state common law causes of action as well. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 355 n.1 (3d Cir. 1997), *aff'd*, 527 U.S. 666 (noting that a claim of common law unfair competition "obviously could not be asserted successfully [against instrumentality of the state] in light of the Eleventh Amendment"); *Doe v. Division of Youth & Family Servs.*, 148 F. Supp. 2d 462, 492 (D.N.J. 2001)(claim of common law negligence was barred by the Eleventh Amendment).

### A. Immunity of the State

The plaintiff's brief concedes that the "State itself is entitled to Sovereign Immunity and, therefore, dismissal from the case." (Dkt. No. 15 p. 4) Accordingly, all claims against the State of New Jersey are dismissed with prejudice.

### B. Immunity of the HCPO

The protection of the Eleventh Amendment extends, not just to the state itself, but to arms of the state. These include agencies, departments, and officials, when the state is the real party in interest. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). To determine whether an entity is an arm of the state, a court must consider three factors: (1) whether payment of a judgment resulting from the suit would come from

---

a civil action for damages and for other injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6–2(c).

the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc). The burden of establishing immunity rests on the party asserting it. *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001) (citing *Christy v. Pennsylvania Turnpike Comm'n.*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

Here, the *Fitchik* factors weigh in favor of the application of sovereign immunity to the HCPO with respect to the plaintiff's primary allegations, which relate to the training and supervision of officers. (Section III.B.a, *infra*.) I address separately the plaintiff's secondary allegations, which relate to the HCPO's personnel decisions. (Section III.B.b, *infra*.)

### a.  Law enforcement training and supervision

### i.  *Fitchik* factor 1

The first question in assessing Eleventh Amendment immunity is whether a money judgment against the defendant "would be paid from the state treasury." *Fitchik*, 873 F.2d at 659.[7] A "central goal" of the Eleventh Amendment is "the prevention of federal court judgments that must be paid out of the state's treasury." *Id.* at 659–60.

There has been an authoritative statement that any judgment in this case would be paid from the state treasury. The New Jersey Attorney General has determined that the State has a duty to indemnify the HCPO pursuant to the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:10A-1.[8] (*See*

---

[7]    The Court of Appeals for the Third Circuit long held that *Fitchik* factor 1 was "the most important factor" in the analysis. *Chisolm*, 275 F.3d at 323 (citing cases); *see also Christy* 54 F.3d at 1145 (most Circuits "generally accord[] this factor dispositive weight") (citing *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994)). More recently, however, the Court of Appeals has stated that "we [] no longer ascribe primacy to the first factor." *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005). The financial liability factor is now considered just "one factor co-equal with [the] others in the immunity analysis." *Id.* at 240.

[8]    In relevant part, the NJTCA states:

Dkt. No. 8 p. 12; Dkt. No. 8-2 ¶ 3.) The plaintiff argues that the State's decision to indemnify the HCPO is merely strategic and should not be given great weight. However, courts in this district have found the State's commitment to indemnify the defendant agency to be persuasive. *See In re Camden Police Cases*, No. 11-1315, 2011 WL 3651318, at *5 (D.N.J. Aug. 18, 2011)(finding the first *Fitchik* factor satisfied in part because "the Attorney General has in fact indemnified the [County Prosecutor's Office] for any judgment in this case"); *Kandil v. Yurkovic*, No. 6-4701, 2007 WL 4547365, at *3 (D.N.J. Dec. 18, 2007)("Further, the State is ... indemnifying the [County Prosecutor's Office] regarding all matters of this case.") (internal quotations omitted); *Landi v. Borough of Seaside Park*, No. 7-5319, 2009 WL 606141, at *4 (D.N.J. March 9, 2009)(noting as part of the *Fitchik* analysis, that the Attorney General was indemnifying the County Prosecutor's Office).[9] I agree with that approach, and will follow it.

Even setting aside the Attorney General's ruling, I would be constrained to agree that the State is obligated to indemnify the HCPO. Under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, "they act as agents of the State." As such, they are entitled to indemnity under the NJTCA for judgments arising from such conduct. *Wright v. State*, 169 N.J. 422, 450, 778 A.2d 443, 461–62, 464 (2001).

---

[T]he Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment.

N.J. Stat. Ann. § 59:10A-1.

[9]    True, the Third Circuit has found that "discretionary subsidies committed [by the State] in reaction to a judgment ... would not necessarily transform the recipients into alter egos of the state." *Christy*, 54 F.3d at 1147 (quoting *Bolden v. Southeastern Pa. Transp. Authority*, 953 F.2d 807, 819 (3d Cir. 1991)); *see Fitchik*, 873 F.2d at 661 ("Although New Jersey might appropriate funds to [defendant] to meet any shortfall caused by judgments against [defendant], such voluntary payments by a state do not trigger [Eleventh Amendment] immunity.") The decision here—a pre-judgment determination by the Attorney General that the State is obligated by law to indemnify the HCPO—is different.

County prosecutors do not always act as State agents, however; they do so only when discharging their law enforcement and prosecutorial functions. Thus a court must determine "in which capacity the prosecutor's office was acting when the actions that gave rise to the plaintiff's claims took place." *Landi*, 2009 WL 606141, at \*4; *Reed v. Straniero*, No. 06-3496, 2009 WL 3230861, at \*5 (D.N.J. Oct. 1, 2009).

The case law provides some guidance as to drawing that distinction properly. "[W]hen county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator," they act on behalf of the county and are not entitled to state indemnification. *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir. 1996). But training and policy decisions that "require legal knowledge and the exercise of related discretion" are prosecutorial functions, which are therefore to be distinguished from administrative tasks like "workplace hiring." See *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).[10]

Plaintiff's allegations with respect to the HCPO are, at bottom, that it did not properly train or supervise Walker. That deficient training allegedly resulted in his off-duty shooting and killing of Mr. Harvey with his service weapon. S*ee, e.g.,* Cplt. ¶ 3 ("All claims asserted in this action arise out of the incident resulting in the death of Joseph Harvey …."); ¶ 9.b (HCPO is responsible for "proper training regarding the use of service weapons … as well

---

[10]     In *Carter v. City of Philadelphia*, 181 F.3d 339 (1999) the Third Circuit held that a prosecutor's office's policies regarding training and supervision involved administration rather than law enforcement. That case, however, turned on Pennsylvania law and so was not governed by *Wright*. For that reason, I believe that *Carter* is an unreliable guide to the status of a county prosecutor's office in New Jersey. See *In re Camden Police Cases*, 2011 WL 3651318, at \*7 n.7 ("Indeed, in *Carter*, the principal case relied on by Plaintiff, the Third Circuit considered whether, under Pennsylvania law, the Philadelphia District Attorney's Office was an arm of the Commonwealth of Pennsylvania under the *Fitchik* factors … Here, the Court must analyze whether the CCPO is an arm of the State of New Jersey under New Jersey law. Thus, the Court is guided by the Third Circuit's analysis in *Hyatt*, which granted immunity under the Eleventh Amendment to a New Jersey county prosecutor. See [*Hyatt v. County of Passaic*, 340 F. App'x 833, 835 (3d Cir. 2009)].").

as ... the use of deadly force"); ¶ 49 (HCPO lacked adequate policies on "the excessive use of force by its law enforcement officers"); ¶ 67 (HCPO failed to properly train and supervise employees related to a "anti-harassment and anti-retaliation policy"); ¶ 68 (HCPO failed to "adequately train officers and/or detectives to respond appropriately in confrontational situations, to refrain from excessive use of force").

I find that training and supervision of a detective as to the permissible use of deadly force is no mere administrative or personnel matter. It is at the core of the law enforcement function. For claims arising from that training, the HCPO would be entitled to indemnification under the NJTCA. See *Wright*, 169 N.J. at 450, 778 A.2d at 461–62.

Accordingly, because (1) the state will, in fact, be responsible for any judgment against the HPCO, and (2) the HCPO's supervision and training of officers is a law enforcement function, the first *Fitchik* factor weighs strongly in favor of sovereign immunity with respect to these allegations.

### ii. *Fitchik* factors 2 & 3

The second and third *Fitchik* factors are interrelated. The second factor asks "whether state law treats [the HCPO] as independent, or as a surrogate for the state." *Fitchik*, 873 F.2d at 662. The third requires an inquiry into the HCPO's "degree of autonomy" in relation to the State of New Jersey. *Id.* at 659. More legal independence, or more autonomy, would tend to weigh against sovereign immunity.

As to the second factor, county prosecutors are "appointed by the Governor with the advice and consent of the [State] Senate." N.J. Const., Art. VII, Section II.1. By state statute, "the criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors." N.J. Stat. Ann. § 2A:158-4. In addition, and as discussed *supra*, it is well established that the HCPO acts on behalf of the State when performing prosecutorial functions such as training and supervising its investigators. *Wright*, 169 N.J. at 450, 778

A.2d at 462 ("when prosecutors perform their law enforcement function, they are discharging a State responsibility that the Legislature has delegated to the prosecutors ... the county prosecutors' law enforcement function is clearly a State function."); *see Hyatt v. County of Passaic*, 340 Fed. App'x 833, 836 (3d Cir. 2009)(under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, "they act as agents of the state") (quoting *Wright*, 169 N.J. at 461-62, 778 A.2d at 464). Legally, then, the HCPO is closely bound to the State, and is not an independent entity.

Regarding the third factor, New Jersey law provides that the Attorney General shall maintain a supervisory role over the HCPO. *See Wright*, 169 N.J. at 452, 778 A.2d at 462. The Attorney General is authorized by statute to intervene and supersede any county prosecutor in a criminal investigation or proceeding. N.J. Stat. Ann. § 52:17B–107(a).[11] If a county does not have a prosecutor, the Attorney General is required to prosecute criminal matters for that county. *See* N.J. Stat. Ann. § 52:17B–104. The Attorney General is also empowered to issue binding directives to a county prosecutor's office. *See, e.g.*, *In re Camden Police Cases*, 2011 WL 3651318, at *40-41. In short, whatever autonomy the county prosecutor's office possesses in law enforcement matters is both limited and subject to supersession at the pleasure of the State.

Because all three of the *Fitchik* factors weigh in favor of sovereign immunity, I find that the HCPO must be treated as an arm of the State for purposes of these claims, which arise from the training and supervision of

---

[11]     Whenever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may (1) supersede a county prosecutor in any investigation, criminal action or proceeding, (2) participate in any investigation, criminal action or proceeding, or (3) initiate any investigation, criminal action or proceeding. In such instances, the Attorney General may appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions or proceedings as shall be necessary to promote and safeguard the public interests of the State and secure the enforcement of the laws of the State.

N.J. Stat. Ann. § 52:17B-107(a):

investigative officers. Accordingly, these claims are barred by the Eleventh Amendment and are dismissed with prejudice for lack of subject matter jurisdiction.

### b.      Personnel decisions

Not all of the claims against the HCPO relate strictly to law enforcement training, however. In a handful of instances throughout the Complaint—usually as part of a laundry list of verbs—there are parallel allegations that arguably implicate the HCPO's more pedestrian administrative or personnel decisions. *See, e.g.*, Cplt. ¶ 28 (HCPO failed to "properly screen, hire, train, evaluate, supervise, and/or control its employees"); ¶ 59 (HCPO was responsible for "training, hiring, screening, instruction, supervision[,] evaluation and/or discipline" of employees). It must be said that these are not clearly alleged as separate claims. The plaintiff explains, however, that these components of the claims involve "negligent hiring ... [and] discipline, or lack thereof." (Dkt. No. 15 p. 8) I assume *arguendo* that claims of negligent hiring and failure to discipline have been alleged. As to these, I discuss the *Fitchik* factors separately.

Administrative tasks concerning personnel—hiring, firing, promotion, demotion—are to be distinguished from law enforcement functions. *See Van de Kamp*, 555 U.S. at 344. When performing such administrative functions, the HCPO has more autonomy. It acts as a component of County government, rather than on behalf of the State. *See Coleman*, 87 F.3d at 1499; *Hyatt*, 340 Fed. App'x at 836. As to a judgment arising from claims involving these administrative functions, the NJTCA would not mandate indemnification by the State.[12] Therefore, as to the claims of negligent hiring or failure to discipline, the first *Fitchik* factor weighs against sovereign immunity.

---

[12]     Of course, the State might, as a matter of discretion, decide to indemnify the County after the fact. But that is a far weaker claim under *Fitchik* factor 1. *See* n.9, *supra*. Because I find no strong basis for sovereign immunity under factors 2 or 3, either, discretionary indemnification would not tip my analysis.

For the same reason, the second and third *Fitchik* factors also lean against the application of sovereign immunity. The HCPO points to no statutory or *de facto* domination of its administrative or personnel functions by the State. Administrative tasks are not part of the HCPO's core law enforcement function, and therefore would not be regarded as state functions under *Wright*.

The *Fitchik* factors therefore work against the application of sovereign immunity with respect to claims arising from the HCPO's ordinary administrative or personnel decisions. Accordingly, I will not dismiss the Complaint's allegations of negligent hiring and failure to discipline on jurisdictional grounds.[13]

### c. Immunity of the County

The County asks the Court to "apply analogously" the brief submitted on behalf of the State. (Dkt. No. 14 p. 4) That is a question-begging request; whether the County should be treated as an arm of the State is the very crux of the Eleventh Amendment issue. I will nevertheless briefly address the sovereign immunity issue as it applies to the County.

In general, counties are not entitled to the benefits of the Eleventh Amendment, and they do not partake of the State's immunity. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)("[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities even though such entities exercise a 'slice of state power.'").

In addition, the "party asserting Eleventh Amendment immunity (and standing to benefit from its acceptance) bears the burden of proving its applicability." *Christy*, 54 F.3d at 1144. Here, the County has made no attempt to demonstrate that it is entitled to sovereign immunity pursuant to *Fitchik*. The County does not so much as argue, let alone demonstrate, that any

---

[13]    I will dismiss these claims without prejudice, however, for failure to state a claim. See Section IV.A, *infra*.

judgment against it will be paid by the State, that it is legally a surrogate for the State, or that it lacks autonomy.

Accordingly, I will not dismiss the claims against the County based on sovereign immunity.

## IV.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The government defendants move in the alternative to dismiss the Complaint for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6). On grounds of sovereign immunity, I have already dismissed all claims against the State, as well as the law enforcement training related claims against the HCPO. I therefore consider this motion to dismiss only in relation to the remaining claims against the HCPO (Section IV.A) and the County (Section IV.B).

### A. Claims against the HCPO

#### a. Counts I & II: vicarious liability

Counts I and II (to the extent not already dismissed on sovereign immunity grounds) assert Section 1983 claims against the HCPO for violations of several amendments to the Constitution.[14] The HCPO, however, was not directly involved in the events in suit; rather, it is alleged to be liable for the acts of Walker.

Under Section 1983, a local government unit cannot be held vicariously liable for the acts of an employee via *respondeat superior*. It may, however, be held directly liable for its own acts. Counts I and II, however, do not contain facts to support such direct liability. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)).

---

[14]     Actually, Count I cites the Constitution, but does not cite 42 U.S.C. § 1983. I assume that Count I, like Count II, is intended as a Section 1983 claim.

Counts I and II are dismissed as against the HCPO with prejudice, to the extent that they rest on a vicarious liability theory. To the extent Counts I and II (on their own or in combination with Counts III and IV) are meant to allege direct liability on the part of HCPO based on hiring and discipline, the motion to dismiss is denied. (*See* Section IV.A.b, immediately following.)

### b. Counts III & IV: Supervisory and *Monell* § 1983 liability

Counts III and IV attempt to state theories by which the HCPO might be found liable in its own right (*i.e.,* not vicariously or by *respondeat superior*) for Walker's acts. Count III asserts "supervisory liability"; Count IV specifically cites *Monell, supra.* Both attempt to state how the HCPO's own actions contributed to the violations alleged. Because both rest on, *inter alia*, HCPO's hiring and disciplinary practices, I discuss them together.

A local government unit is a "person" potentially liable under Section 1983. *Monell*, 436 U.S. at 690. But it is liable only to the extent that *its own* policies or practices led to a deprivation of constitutional rights. *Id.* at 694. A municipality or local government unit, then, can be found liable under Section 1983 "where its policies are the 'moving force [behind] the constitutional violation'" that is alleged. *City of Canton Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell*, 436 U.S. at 694).

That liability-creating "force" may be exercised through formal policy or custom. Policy is made when a "'decisionmaker possess[ing] final authority to establish [local] policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law." *Bielevicz v. Dubinion*, 915 F.2d 845, 850 (3d Cir. 2007) (citing *Andrews*, 895 F.2d at 1480).

16

The Complaint attempts to impute liability to the HCPO based on policies and customs, both in general and as they specifically relate to Walker. Count III (or rather the hiring and discipline portion of Count III that is not barred by sovereign immunity),[15] alleges that HCPO's improper hiring and discipline of its employees constituted "customs and policies" that contributed to Mr. Harvey's death. (Cplt. ¶¶ 64, 65) Count IV similarly alleges that defendants "failed to ensure through custom, policy and/or practice that sufficient levels of screening, evaluating, training and supervision of all of its employees ... particularly Walker were in place," and that this led to Harvey's death. (Cplt. ¶ 70; *see also* Cplt. ¶ 73)

The claims against the HCPO are expressed fairly generally. I will construe the Complaint, however, as asserting Section 1983 claims[16] against the HCPO under the following theories: negligent hiring and failure to discipline.

### 1. Negligent Hiring

The complaint alleges that the HCPO had a general policy or custom of failing to screen applicants, which led to the imprudent decision to hire Walker. *See* Cplt. ¶ 70 (defendants "failed to ensure through custom, policy and/or practice that sufficient levels of screening ... of all of its employees ... particularly Walker were in place ... which ultimately led to the Plaintiff's Decedent's untimely and painful death").

Such an allegation gets around the bar on purely vicarious liability. The Complaint, however, states no facts to support its generalized allegation that the HCPO had a custom or policy of failing to screen officers before it hired

---

[15]   Recall that claims of failure to train and supervise officers, which implicate the HCPO's law enforcement functions, are barred by the Eleventh Amendment. *See* Section III.B.a, *supra*.

[16]   The Complaint appears to assert claims of negligent hiring and failure to discipline pursuant to Section 1983. If state law claims are intended, any amended complaint should make that clear.

them. To the extent the negligent hiring claim rests on a "custom" or "policy" theory, it fails for lack of specificity. *See Twombly, supra; Iqbal, supra.*

True, a Section 1983 negligent hiring claim may arise from a single failure to screen a particular employee (here, Walker). Such a cause of action, however, must be very specifically tailored to the facts. *See Board of County Com'rs. of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409 (1997).

> Every injury suffered at the hands of a [local] employee can be traced to a hiring decision in [this] "but-for" sense: But for the [] decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

*Id.* at 410. Courts have "consistently interpreted [*Brown*] to mean that [local] liability for negligent hiring based on a single hiring decision requires the threat identified in an applicant's background to be basically *identical* to the harm eventually caused by the applicant." *MS ex rel. Hall v. Susquehanna Township School Dist.*, 43 F. Supp. 3d 412, 426 (M.D. Pa. 2014) (emphasis in original); *see Adams v. City of Camden*, 461 F. Supp. 2d 263, 268-69 (D.N.J. 2006)(single-incident negligent hiring claim "must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff" and not just "the mere probability that any officer inadequately screened will inflict any constitutional injury") (quoting *Brown*, 520 U.S. at 411-12).

The Complaint alleges no facts about the process by which Walker was hired. It identifies no warning signs in his background that a diligent search would have uncovered. And it fails to allege that such facts, if uncovered, would have prevented a prudent employer from hiring Walker. The Federal Rules do not permit a party simply to claim that something is true in the hope that it might be. Even allegations on information and belief (which this is not) require a good faith diligent investigation.[17]

---

[17]    Pleading on information and belief "does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the

That said, the relevant facts are largely within the control of the HCPO. I will therefore, at least for the time being, deny the motion to dismiss Counts III and IV, to the extent they allege a negligent hiring claim. Discovery as against the HCPO should focus on this claim. Should supporting evidence fail to materialize, I will permit an early, focused motion for summary judgment.

### 2. Failure to Discipline

The Complaint makes similarly generalized allegations with respect to the HCPO's disciplinary practices. *See* Cplt. ¶ 73 (defendants' "failures to discipline their employees ... were conducted under color of state law and such unconstitutional customs, practices and/or policies amounted to ... deliberate indifference ... and were the moving force behind the Plaintiff's decedent's untimely and painful death..."). These are legal conclusions, not facts.

The Third Circuit has held that a claim for failure to discipline "can only form the basis for section 1983 *Monell* liability if the plaintiff can show both contemporaneous knowledge of the offending incident[,] or knowledge of a prior pattern of similar incidents[,] and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Baldani v. Township of Millburn*, No. 07-4792, 2008 WL 4512939, at *5 (D.N.J. Sept. 29, 2008) (quoting *Montgomery v. De Simone*, 159 F.3d 120, 126-27 (3d Cir. 1998)); *see MS ex rel. Hall*, 43 F. Supp. 3d at 425 (a claim of "negligent retention/failure to discipline" under *Monell* requires "indifference and knowledge by a policymaker"). The Complaint alleges no such facts.

First, the Complaint fails to identify any general HCPO policy or custom of failing to discipline employees. No examples are given. Nor does the Complaint allege a pattern of violations resulting from failure to discipline employees. Indeed, the Complaint does not say anything at all factually about

_____

circumstances; it is not a license to ... make claims ... without any factual basis or justification." FED. R. CIV. P. 11, Notes of Advisory Committee on 1993 Amendments.

what the disciplinary policies of the HCPO were, or how they were implemented.

Second, with respect to Walker specifically, the Complaint fails to allege a single fact about disciplinary action or inaction by the HCPO. It does not name even one prior incident for which Walker was not disciplined—let alone a pattern of such incidents that were condoned by a supervisor.

Here again, however, the relevant facts are largely within the control of the HCPO. I will therefore, for the time being, deny the motion to dismiss Counts III and IV, to the extent they allege a failure to discipline claim. Discovery as against the HCPO should focus on this claim, and if appropriate I will permit an early, focused motion for summary judgment.

### c.    Count VI: NJCRA Claim

Count VI alleges against the HCPO a deprivation of civil rights, in violation of the NJCRA. This count asserts an alternative legal theory, but contains no additional facts, and the NJCRA is construed closely in parallel to Section 1983. The pattern of dismissals will therefore be duplicated as to the NJCRA claim.

The training or supervision claims, whether brought under Section 1983 or the NJCRA, have been dismissed on Eleventh Amendment grounds.

The NJCRA, like Section 1983, does not impose vicarious or *respondeat superior* liability. *See Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *8 (D.N.J. July 15, 2015) ("[B]ecause *respondeat superior* liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that *respondeat superior* liability is not permitted for claims under the New Jersey Constitution and the NJCRA.") (quoting *Ingram v. Twp. Of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012)); *Estate of Dasaro v. County of Monmouth*, No. 14-7773, 2015 WL 5771606, at *5 n.3 (D.N.J. Sept. 30, 2015)(same). To the extent the Count VI NJCRA claim is based on the HCPO's vicarious liability for the actions of Walker, then, it is

dismissed with prejudice. *See* Section IV.A.a, *supra.*

Alternatively, the Complaint may be intended to allege supervisory or *Monell*-style liability against the HCPO under the NJCRA. If so, it is likewise dismissed to the extent stated in Section IV.A.b, *supra,* but sustained as to claims based on hiring and discipline.[18] *See B.D. v. Board of Educ. Of the Greater Egg Harbor Regional High School District,* No. 14-7232, 2015 WL 4508303, at *6 (D.N.J. July 24, 2015)(rejecting NJCRA claim on based on *respondeat superior* according to *Monell* and stating that to succeed on the claim, the plaintiff must "allege that the supervisory defendants maintained a policy or custom regarding the alleged discrimination"); *Hudgon v. LaFleur,* No. 07-3626, 2010 WL 2950004, at *7 n.6 (D.N.J. July 22, 2010)("the Court sees no reason not to interpret the NJCRA consistent with *Monell* as precluding municipal liability absent an official pattern or practice.").

Count VI, then, is dismissed as against the HCPO, except for the claims based on hiring and failure to discipline.

### d.    Counts VII & VIII: Wrongful Death and Survivor's Acts

Counts VII and VIII assert a claim against the HCPO under the Wrongful Death Act and the Survivor's Act. The two theories are not segregated as between the two counts. *See* Cplt. ¶ 83 (citing both New Jersey Wrongful Death Act and Survivor's Act). Those statutes authorize a survivor or a decedent's estate to assert claims, but do not themselves define the scope of such underlying claims. To some extent, the Complaint leaves the Court guessing as to what those underlying claims are intended to be. I will here assume, however, that they would parallel the Section 1983 and NJCRA claims discussed above.

As against the HCPO, then, the Survivor's Act and Wrongful Death

---

[18]    *Monell*-style claims under the NJCRA related to the HCPO's law enforcement functions are barred by Eleventh Amendment sovereign immunity, as discussed *supra.*

claims will be dismissed precisely to the extent that the earlier counts have been dismissed. The only remaining claims against the HCPO are Section 1983 and NJCRA causes of action for negligent hiring and failure to discipline. Accordingly, the claims brought under the Wrongful Death and Survivor's Acts would be confined to those theories as well.

A wrongful death claim is asserted against the HCPO by Mr. Harvey, Sr., on his own account, based on the harm that he has suffered as a result of his son's death. *See* N.J. Stat. Ann. § 2A:31-1 *et seq.* "[T]he Wrongful Death Act provides to decedent's heirs a right of recovery for pecuniary damages for their direct losses as a result of their relative's death due to the tortious conduct of another …. Thus, a wrongful death action 'compensate[s] survivors for the pecuniary losses they suffer'…." *Aronberg v. Tolbert*, 207 N.J. 587, 603, 25 A.3d 1121, 1130 (2011) (quoting *Smith v. Whitaker*, 160 N.J. 221, 231, 734 A.2d 243 (1999)).

A wrongful death claim, however, cannot go forward in the absence of a valid underlying claim against the defendant. "[Under] the Wrongful Death Act, the viability of a claim is triggered by a 'wrongful act' causing death 'such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury.' N.J.S.A. 2A:31–1." *Id.,* 207 N.J. at 602, 25 A.3d at 1130.

Mr. Harvey, Sr., as administrator of the estate of his son, also brings a claim under The Survivor's Act, N.J. Stat. Ann. § 2A:15-3. Survivor's and Wrongful Death Act claims are distinct, but parallel in one important way: both provide that a viable cause of action will outlive the victim. The Survivor's Act preserves a right of action that the deceased himself would have possessed, and permits it to be brought on behalf of the estate. *See Aronberg,* 207 N.J. at 593, 25 A.3d at 1124. Thus a survivor's action depends on whether the decedent would have possessed a viable claim against the defendant:

> Under the Survivor's Act, a claim may be pursued by the decedent's estate if there was a 'wrongful act … where death resulted from injuries for which the deceased would have had a cause of action if

he had lived.' N.J.S.A. 2A:15–3....[T]he estate in a survivor's action has no better claim than [the decedent] had in life.

*Aronberg,* 207 N.J. at 603, 25 A.3d at 1130.

To the extent that the other claims have been dismissed as to the HCPO, then, the derivative Wrongful Death Act and Survivor's Act claims must be dismissed as well. *See Abramson v. Ritz-Carlton Hotel Co., LLC,* No. 09-3264, 2011 WL 2149454, at *5 (D.N.J. May 31, 2011), *aff'd,* 480 F. App'x 158 (3d Cir. 2012) (finding plaintiff's wrongful death claim "derivative of the underlying negligence claim," and determining that "[b]ecause the negligence claim will be dismissed, plaintiff's derivative claims will also be dismissed"); *Durkin v. Paccar, Inc.,* No. 10-2013, 2010 WL 4117110, at *4 (D.N.J. Oct. 19, 2010)(noting that the plaintiff's "derivative claims" pursuant to the wrongful death and survivorship statues would not be addressed by the court because they were "dependent upon the validity" of counts that had already been dismissed).

I have already held that, as to the HCPO, a number of causes of action must be dismissed on jurisdictional or substantive grounds. The analogous Wrongful Death and Survivor's Act claims, because they depend on the validity of the underlying claims, must be dismissed as well. They are valid only to the extent the earlier counts are valid: *i.e.,* to the extent they assert negligent hiring and failure to discipline.[19]

Accordingly, Counts VII and VIII are dismissed as against the HCPO to the same extent that the earlier counts have been dismissed. The jurisdictional dismissals are with prejudice, and dismissals for failure to state a claim are without prejudice.

---

[19]    While not prejudging the issue, I flag for the government defendants' consideration the provisions of the NJTCA that govern immunity of public entities under New Jersey law. *See* N.J. Stat. Ann. § 59:2–1 *et seq.; see also Wymbs ex rel. Wymbs v. Twp. of Wayne,* 163 N.J. 523, 539, 750 A.2d 751, 760 (2000)("It is well established that the burden is on the public entity both to plead and prove its immunity under [the NJTCA].'")

### B. Claims against the County

None of the claims against the County were barred on jurisdictional grounds based on Eleventh Amendment sovereign immunity. I will therefore analyze all of the plaintiff's allegations against the County to determine whether they state a claim.

### a.    Counts I & II

The theory of the County's vicarious liability implicit in Counts I and II is insufficient in law. As to Counts I and II, the defective *respondeat superior* rationale is identical to that discussed and rejected in Section IV.A.a, *supra.* Nor do Counts I and II contain any facts suggesting that the County (as opposed to Walker's employer, the HCPO), had anything to do with the HCPO's supervision, training, hiring, or discipline of Walker.

Accordingly, Counts I and II are dismissed in their entirety as against the County. To the extent those Counts assert *respondeat superior* liability, that dismissal is with prejudice. The dismissal is without prejudice, however, to the submission of a properly supported amended complaint alleging that the County had actual involvement in supervision, training, hiring, or discipline of Walker. (*See* Section IV.B.b, immediately following.)

### b.    Counts III and IV: Supervisory or *Monell* Liability

As discussed in section IV.A.b, *supra*, a local government may be liable to the extent that its own policies and customs led to a deprivation of constitutional rights. I will generously read the Complaint to allege against the County claims of failure to supervise and failure to train,[20] as well as negligent hiring and failure to discipline.

---

[20]    Recall that, as to the County (as opposed to the HCPO), there has been no showing that the failure to supervise and failure to train claims are barred by the Eleventh Amendment. *Compare* Sections III.B.a & b *with* Section III.B.c, *supra.*

## 1. Failure to supervise

A claim of failure to supervise requires deliberate indifference. A plaintiff must allege and prove that "1) [local] supervisors had contemporaneous knowledge of the offending incident or of a 'prior pattern of similar incidents,' and 2) the supervisors' action or inaction somehow communicated approval of the offending behavior." *Tobin v. Badamo*, 78 Fed. App'x 217, 219 (3d Cir. 2003)(quoting *Montgomery*, 159 F.3d at 126-27).

The allegations relating to the County's failure to supervise are dismissed without prejudice. As stated in Section IV.A.b.2, *supra,* the Complaint fails to state any facts suggesting knowledge, a pattern of incidents, or the County's explicit or tacit communication of approval. No direct involvement by the County can be inferred from the factual allegations. Nor is there any reason to think that the facts relevant to the HCPO's supervision of its investigators are in the possession of the County. I will therefore dismiss the claims against the County without prejudice for failure to state a claim under the standards of *Iqbal* and *Twombly. See* pp. 3–4, *supra.*

## 2. Failure to train

Alleging County "liability on a failure to train claim under § 1983 is difficult." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Canton*, 489 U.S. at 389. Typically "[a] pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Smart v. Township of Winslow,* No. 13-4690, 2015 WL 5455643, at *5 (quoting *Connick v. Thompson*, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (internal quotations omitted); *see Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)(deliberate indifference generally requires that "the failure has caused

a pattern of violations").

This Complaint speaks solely in conclusions and generalities, and fails to allege any concrete facts in support of a failure to train claim. In particular, the Complaint identifies no pattern of violations that the County knew about or failed to remedy. *See* discussion at Section IV.A.b.2, *supra*.

There is a second option: a "single incident" claim. Under a "narrow range of circumstances," a failure to train claim may be established without a pattern of violations. *See Gaymon v. Esposito*, No. 11-4170, 2013 WL 4446973, at *14 (D.N.J. Aug. 16, 2013)("There are two means of finding such deliberate indifference in a failure to train claim: (1) through a pattern of similar constitutional violations ... and (2) 'single-incident' liability....") (citations omitted); *see also Brown*, 520 U.S. at 409 ("In *Canton*, we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability."). A "single-incident" failure to train claim can arise when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390; *see also MS ex rel. Hall*, 45 F. Supp. 3d at 425. The Court in *Canton* offered the example of failing to train police officers on the limitations of deadly force despite a "moral certainty" that officers will use force "to arrest fleeing felons." *Canton*, 489 U.S. at 390 n.10.

In *Connick*, the Court recently clarified that the hypothetical case posed in *Canton* was limited to a scenario where "the armed police officers have *no knowledge at all* of the constitutional limits on the use of deadly force." *Connick* 131 S.Ct. at 1363 (emphasis added). Addressing a claim of inadequate training of prosecutors regarding their *Brady* obligations, the Court explained:

> [I]t is undisputed here that the prosecutors in Connick's office were
> familiar with the general *Brady* rule. Thompson's complaint

26

therefore cannot rely on the utter lack of an ability to cope with constitutional situations that underlies the *Canton* hypothetical, but rather must assert that prosecutors were not trained about particular *Brady* evidence or the specific scenario related to the violation in his case. That sort of nuance simply cannot support an inference of deliberate indifference here. As the Court said in *Canton*, "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." 489 U.S., at 392, 109 S.Ct. 1197 (citing [*City of Oklahoma v. Tuttle,* 471 U.S. 808, 823 (1985)] (plurality opinion)). But showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability.

*Id.*; *see also Thomas v. Cumberland County*, 749 F.3d 217, 225 (3d Cir. 2014) (reversing grant of summary judgment against plaintiff's failure to train claim and giving weight to the fact that the officers had no training at all on the relevant subject); *Smart v. Winslow*, No. 12-4690, 2015 WL 5455643, at *6 (D.N.J. 2015)(dismissing claim in part because the complaint did not contain allegations that the township "does not train police officers on exigent circumstances").

Here, the plaintiff does not allege, along the lines of the hypothetical case posed in *Canton*, that the police officers received no training in the use of deadly force. Instead, the plaintiff seems to allege, along the lines of *Connick*, that the officers should have been given additional or better training. *See, e.g.,* Dkt. No 1 ¶ 27 ("[T]he County ... failed to *adequately* ... train its employees...."); ¶ 28 (the County failed "to *properly* ... train ... its employees")(emphasis added).

More fundamentally, the plaintiff's allegations are too general and conclusory to sustain a claim of failure to train. Here, as elsewhere, the Complaint merely posits that, because this shooting occurred, Walker's training must have been inadequate. It states no facts about the training that the officers generally, or Walker in particular, did or did not receive. *See Smart*, 2015 WL 5455643, at *6 (dismissing claim against township where the plaintiff did not allege that the "specific training program is deficient" and against the

county prosecutor's office where the allegations were "wholly conclusory"); *Gaymon v. Esposito*, No. 11-4170, 2013 WL 4446973, at *15 (dismissing claim against Essex County where the complaint lacked any facts "whatsoever about the nature and extent of training" on deadly force including the "existence or lack thereof" of such a policy); *Fairview Ritz Corp. v. Borough of Fairview*, No. 09-875, 2013 WL 2946986, at *25 (D.N.J. Nov. 6, 2013) (failure to train not alleged where complaint "fail[ed] to state facts supporting their … 'single-incident' theory" such as "specific deficiencies in training programs").

The plaintiff highlights the need for discovery, and I have given the consideration some weight as regards the HCPO, which employed Walker. The defendant I am considering here, however, is the County, which is one more step removed from Walker's acts. Even at this early stage, some specificity is required—particularly when the cause of action is based on an attenuated causal chain that cannot simply be assumed to exist. *See Gaymon,* 2013 WL 4446973, at *16 (cautioning that culpability for a Section 1983 claim "is at its most tenuous where a claim turns on a failure to train") (quoting *Connick,* 131 S.Ct. at 1359).

The allegations of the Complaint are too vague and conclusory to support a failure to train claim against the County. *See* pp. 3–4, *supra.* I will dismiss this claim against the County without prejudice.

### 3. Negligent hiring and failure to discipline

The Complaint's allegations regarding negligent hiring and failure to discipline are identical to those asserted against the HCPO. I have already found those allegations insufficient. *See* Section IV.A.b.1 and b.2, *supra.* As against the County, they have even less substance, because the HCPO, not the County, was directly responsible for hiring and disciplining Walker. The Complaint states no facts specific to the County regarding the hiring and discipline of its investigators. Nor does the Complaint suggest that the specificity requirement should be relaxed because key facts are in the control of

28

the County. I will dismiss these claims as against the County without prejudice, for failure to state a claim under the standards of *Iqbal* and *Twombly*. *See* pp. 3–4, *supra*.

### c. Counts VI, VII & VIII: NJCRA, Wrongful Death Act, Survivor's Act

For the reasons stated above, to the extent the NJCRA claims against the County are based on *respondeat superior*, they are legally invalid and will be dismissed with prejudice. To the extent the NJCRA claims are based on *Monell*-style liability, they fail to state the necessary supporting facts and are dismissed without prejudice for failure to state a claim. *See* Section IV.A.c, *supra*.

As discussed above, the Wrongful Death and Survivor's Act claims as against the County depend on the viability of the earlier counts. *See* Section IV.A.d, *supra*. As against the County, those earlier counts have all been dismissed. I therefore likewise dismiss Counts VII and VIII as against the County, without prejudice.

## V.   CONCLUSION

For the foregoing reasons, the government defendants' motions to dismiss under rules 12(b)(1) and 12(b)(6) are GRANTED in part and DENIED in part.

    (1) As to the State: The Rule 12(b)(1) motion to dismiss for lack of jurisdiction is granted, and all claims are dismissed with prejudice.

    (2) As to the HCPO:

        a.  The Rule 12(b)(1) motion to dismiss for lack of jurisdiction, considered as to all claims, is decided as follows:

            i.  All Counts, to the extent they relate to law enforcement training and supervision, are dismissed with prejudice.

            ii.  Dismissal is denied to the extent the counts relate to hiring and discipline.

29

b. The Rule 12(b)(6) motion, considered only as to claims not already dismissed on jurisdictional grounds, *see* 2(a)(ii), *supra*, is decided as follows:

    i. All Counts, to the extent they allege vicarious liability, are dismissed with prejudice.

    ii. The motion is denied with respect to all Counts, to the extent they allege HCPO direct liability based on hiring and discipline.

(3) As to the County:

a. The Rule 12(b)(1) motion is denied.

b. The Rule 12(b)(6) motion is decided as follows:

    i. All Counts, to the extent they allege vicarious liability, are dismissed with prejudice.

    ii. All Counts, to the extent they intend to allege County liability based on training, supervision, hiring, and discipline, are dismissed without prejudice.

Here are the claims that remain as to each named defendant:

JOSEPH LAMONT WALKER:  All claims.

HUDSON COUNTY PROSECUTOR'S OFFICE: Section 1983, NJCRA, Wrongful Death Act, and Survivor's Act claims for negligent hiring and failure to discipline.

COUNTY OF HUDSON: None (all claims dismissed)

STATE OF NEW JERSEY: None (all claims dismissed)

Dated: November 24, 2015
Newark, New Jersey

**HON. KEVIN MCNULTY**
**United States District Judge**

30